## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**MERAB PIPIIA**

**CIVIL ACTION NO. 26-1021**

**VS.**

**SECTION P**

**JUDGE S. MAURICE HICKS, JR.**

**WARDEN WINN CORRECTIONAL CENTER, ET AL.**

**MAG. JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Petitioner Merab Pipiia,[1] a detainee at Winn Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 9]. For reasons below, the Court should grant the petition.

## Background

Petitioner is a citizen of Ukraine. He was taken into immigration custody on April 19, 2024. [doc. # 1, p. 4]. On May 27, 2025, an immigration judge ordered Petitioner removed from the United States to Ukraine or, in the alternative, to

---

[1] Petitioner's "A-Number" is 249-261-880.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Georgia.  [doc. #s 1, p. 4; 1-3, pp. 9-12].  Petitioner and the Government waived appeal of the removal order.  [doc. #s 1, p. 4; 1-2, p. 1].

Petitioner filed this proceeding on approximately March 23, 2026.  [doc. # 1, p. 8].  Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), he claims that ICE has detained him for a prolonged period and is not likely to remove him in the near future.  *Id.* at 6.  He states that "removal is not foreseeable due to ongoing conflict in Ukraine," "there is no evidence that Ukraine is currently accepting removals from the United States," "travel documentation has not been secured," he has fully cooperated with ICE, his "passport was lost while in government custody" and "is no longer available to facilitate removal," no country has issued travel documents, "Georgian authorities have declined to recognize Petitioner as a citizen and have refused to issue travel documentation," and no country "is willing or able to accept" him.  [doc. #s 1, p. 6; 1-2, pp. 2-3].

Respondents opposed the petition on May 28, 2026.  [doc. # 9].  Petitioner did not file a reply.

## Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States."  *See Zadvydas*, 533 U.S. at 687.  The 'REAL ID Act' of 2005 divests federal courts of jurisdiction

over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory

framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

 "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, he has been detained 384 days (or 1 year, 19 days) following

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

his final order of removal. In addition, he meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

For over one year, the Government has been unable to obtain a travel document for him. In addition, Petitioner states that "removal is not foreseeable due to ongoing conflict in Ukraine," "there is no evidence that Ukraine is currently accepting removals from the United States," "travel documentation has not been secured," he has fully cooperated with ICE, his "passport was lost while in government custody" and "is no longer available to facilitate removal," no country has issued travel documents, "Georgian authorities have declined to recognize Petitioner as a citizen and have refused to issue travel documentation," and no country "is willing or able to accept" him. [doc. #s 1, p. 6; 1-2, pp. 2-3].

Respondents fail to rebut Petitioner's showing and arguments. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents attach the declaration of Acting Field Office Director Justin Williams, who declares in part:

> 6. On May 27, 2025, Petitioner was denied all relief and ordered removed to Ukraine and in the alternative Georgia. This order became administratively final this same day due to both parties waving appeal.

6

. . . .

8. On or about September 18, 2025, ERO forwarded the Petitioner's file to the ERO commercial travel unit.

9. On or about September 22, 2025, ERO noted that Petitioner has nexus to Georgia and initiated a travel document request for Georgia.

10. On or about October 9, 2025, ERO contacted the Attaché of Warsaw, Poland and noted they are scheduling Petitioner for a Special High-Risk Charter (SHRC).

11. On or about November 5, 2025, a SHRC packet was completed and sent to Winn Correctional Center Travel unit.

12. On or about November 6, 2025, ERO noted to not place Petitioner on the November 17, 2025, SHRC due to Poland denying Petitioner's transit per the ERO Warsaw Attaché. That same day, ERO cancelled Petitioner's transfer for travel.

13. On or about December 9, 2025, ERO reached out to Petitioner requesting passport information.

14. On or about January 27, 2026, ERO sent a removal packet to Winn Correctional Center's travel team and noted Petitioner is pending scheduling for removal.

15. On or about February 6, 2026, the travel team at Winn Correctional Center received the Petitioner's flight itinerary scheduled for March 4, 2026, and forwarded it to the ERO point of contact. ERO also noted that the Petitioner's travel document was still pending.

16. On or about February 20, 2026, the ERO Warsaw Attaché informed the ERO point of contact that the Petitioner could not be removed to Ukraine via an SHRC in Poland. The Attaché also noted that if the Petitioner is removed to Georgia, transit through the European Union and Schengen area would not be permitted. The

Warsaw Attaché recommended submitting a request to Türkiye as a potential transit location.

17. On or about March 8, 2026, ERO emailed the travel team to request an update on the scheduling of the Petitioner's removal.

18. On or about March 20, 2026, ERO followed up with the travel team to request an update on the scheduling of the Petitioner's removal.

19. On or about March 23, 2026, ERO sent forms to Winn Correctional Center for service to the Petitioner in order to complete a travel document request for Georgia.

20. On or about March 24, 2026, Petitioner was served with the forms for the travel document to Georgia. That same day ERO received a money order request for Petitioner's travel document request for Georgia for review.

21. On or about April 13, 2026, ERO received correspondence from the ERO Warsaw Attaché noting that Petitioner cannot be transited to Poland for removal per Headquarters and the Polish Border Guard Headquarters.

22. On or about April 16, 2026, ERO sent an email asking for an update on the money order request for Petitioner's travel document request for Georgia.

23. On or about April 19, 2026, ERO received correspondence that there is a backlog on money orders and there is no timeframe of when Petitioner's money order request will be approved.

24. On or about May 4, 2026, ERO followed up regarding the money order request to finalize the Petitioner's travel document application.

25. On or about May 13, 2026, ERO followed up regarding the money order request to finalize the Petitioner's travel document application.

8

26. On or about May 20, 2026, ERO followed up on the money order request to finalize the Petitioner's travel document application and was informed that funding approval is required before the request can be completed.

27. As of May 26, 2026, ERO New Orleans has not received information from Georgia or the Ukraine concerning Petitioner's removal. However, DHS is still actively working on Petitioner's removal to the Ukraine or in the alternative, Georgia.

[doc. # 9-1].

From the above, Respondents do not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Distilled in pertinent part, Respondents inform the Court that (i) Poland denied Petitioner transit, (ii) Petitioner cannot transit through the European Union and Schengen area, (iii) ERO submitted a request for a money order in March 2026, but has not received funding approval, (iv) ERO has not received a travel document for Georgia despite requesting one in September 2025, and (v) ERO has not received information from Georgia or Ukraine concerning Petitioner's removal.  That Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.  Also, while not dispositive, the undersigned finds it persuasive that Petitioner has endured over two years of total detention (2 years, 1 month, 27 days).

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[4]  They do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been communicating with Georgia or Ukraine about Petitioner's removal, that Georgia or Ukraine has recently accepted others similarly situated to Petitioner, that Georgia or

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

Ukraine has an agreement or treaty with the United States affecting Petitioner's removal, or that Georgia or Ukraine is willing to accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

---

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

Respondents even suggest that obtaining travel documents is beyond their control. They state specifically that the "processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." [doc. # 9, p. 4]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Merab Pipiia's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Winn Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8] Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

---

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

**District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 16th day of June, 2026.

_____

Carol B. Whitehurst
United States Magistrate Judge